UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In the Matter of:

**ANTARA SYSTEMS, LLC**
**d/b/a JIMDI PLASTICS**

Case No. 21-00427-swd
Chapter 11- Subchapter V
Hon. Scott W. Dales

     Debtor

_____/

**DECLARATION OF REED E. LAWRIE**
**IN SUPPORT OF CHAPTER 11 PETITION AND FIRST DAY MOTIONS**

I, REED E. LAWRIE, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the managing member of Antara Systems, LLC (the "**Debtor or Antara**"), and I submit this Declaration to assist the Court and other parties in interest in understanding the circumstances that compelled the Debtor to commence its Chapter 11 case and in support of (i) the Debtor's petition for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and (ii) the relief requested by the Debtor pursuant to various motions filed contemporaneously herewith (collectively, the "**First Day Motions**").

2. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other members of the Debtor's senior management, financial advisors from Gantry Business Solutions LLC including Dave Distel and Tim Emmitt, my review of relevant documents, and my opinion based upon my experience, knowledge, and information concerning the Debtor's operations and financial affairs. If called upon to testify, I would testify competently to the facts set forth in this Declaration. The Debtor has authorized me to submit this Declaration on its behalf.

3. Further, I have reviewed generally the First Day Motions and affirm that the facts set forth therein are true and correct to the best of my knowledge.

## BACKGROUND

**Corporate Structure.**

4. Antara produces injection molded components and assemblies for the agriculture, automotive, consumer product, office furniture and recreation markets.

5. The Debtor is owned by three (3) Members. Reed E. Lawrie is the Managing Member and owns 90%. Members, Aaron E. Krul Irrevocable Trust and Joseph E. Krul Revocable Trust each own 5%.

**Business Operations.**

6. The company has approximately 54 employees.

7. The Debtor's headquarters are located at 5375 Edgeway Drive, Allendale, MI 49401.

**Business History.**

8. Jimdi Plastics, Inc. was founded in 1997. It leased a 6,000 square foot building in Jenison, MI. It was formed to produce a proprietary flooring system used in the agriculture industry with the anticipation of doing contract injection molding for other customers.

9. Within the first five (5) years, Jimdi Plastics, Inc. grew quickly and increased from a staff of 4 to 15.

10. In November 2001, Jimdi Plastics, Inc. moved to Allendale, MI and expanded to a 20,000 square foot building with 15 presses and 60 employees.

11. In December 2018, Jimdi Plastics, Inc. aka Jimdi Receivables, Inc. sold its assets to Antara Systems, LLC for $2,200,000.00.

### Events Leading To Chapter 11 Filing

12. Upon the purchase, there were a number of major initiatives that needed to be addressed in order to operate the business:

a)  <u>Deferred Equipment Maintenance</u>.  The injection molding equipment purchased had been neglected and required significant maintenance.  Debtor spent approximately $480,000 in parts and repairs for the purchased injection machines and secondary equipment.

b)  <u>Culture</u>.  In early 2019, the Debtor realized it was not ready to take on new customers and succeed. The Debtor worked hard to educate its team members to ensure they were ready and provided training on how to focus on customers and decisions relating to client needs.  The team members now have stronger client relationships and are well respected by Debtor's customers.

c)  <u>Team Building</u>.  In early 2019, the Debtor worked on employing knowledgeable automotive industry professionals to its technical and management teams.

d)  <u>2019 Year-end</u>.  2019 ended with a $795,000 loss due to the necessary purchases, repairs of equipment, educating team members, underpricing issues, and hiring knowledgeable team member leaders which were all necessary issues to address in order for the Debtor to proceed.

e)  The Debtor ended 2019 and started 2020 with great momentum refining and growing the business.  This was progressing well until March 2020 when the Covid-19 Pandemic began challenging Michigan businesses. The Covid-19 Pandemic cut the Debtor's revenue by 70%, forced a reduction in staff from 67 to 15, reduced shifts from 6 days a week at 3 shifts per day to 4 days a week at 1 shift per day.

      f)      The Debtor received two (2) PPP Loans. The first, unsecured PPP loan was received in May 2020 for $480,980. The second, secured PPP loan was received in February 2021 for $457,500. Both loans were critical to the survival of the business.

      g)      The Covid-19 Pandemic further reduced the number of operators available to fill orders. Operator wages were required to be increased to maintain a workforce. The lack of operators stressed the operating system which caused the Debtor to struggle with fulfilling customer orders. This resulted in depleted inventory and a struggle to complete back orders.

      h)      During late 2020, profit continued to be elusive. The Debtor hired Gantry Business Solutions, LLC ("Gantry") to assist with identifying profitability issues. Gantry was able to identify customer pricing issues that have not been updated since 2010, cycle time issues, and tooling conditions. With Gantry's assistance, the Debtor has been working with customers to revise pricing to profitable levels. Additionally, the Debtor has identified multiple initiatives and obtained new customers which will increase profitability.

13. As noted above, Antara Systems, LLC purchased the assets from Jimdi Plastics, Inc. The business required operating capital to make repairs and hire knowledgeable staff. In December 2018, Antara Systems, LLC obtained two (2) U.S. Small Business Administration Loans from TCF National Bank in the amounts of $350,000 and $2,416,000, respectfully, which are both guaranteed by Reed E. Lawrie.

## FIRST DAY MOTIONS

14. To minimize the adverse effects of the commencement of its chapter 11 case on its business and employees, the Debtor will file several First Day Motions with this Court.

15. I have reviewed the First Day Motions and believe the facts set forth therein are true and correct to the best of my knowledge. I believe that the relief requested in each of the First Day Motions is necessary, appropriate, and is in the best interest of the Debtor's estate, creditors, and other parties in interest.

### A. Employee Wages Motion.

16. In the ordinary course of their businesses, the Debtor incurs payroll obligations to its employees (the "**Employees**"). The Debtor's employs approximately 54 full-time Employees. The Employees perform critical functions for day-to-day business operations. Payroll is made every Friday.

17. The Debtor's records indicate that the amount of Prepetition Compensation and Prepetition Benefits owing to or on account of any one particular Employee will not exceed the sum of $13,650.00 allowable as a priority claim under Sections 507(a)(4) and (a)(5) of the Bankruptcy Code.

### B. Cash Collateral Motion.

18. Through the Cash Collateral Motion, the Debtor seeks Court approval to use cash in which the Secured Lenders (as defined in such motion) may assert a lien (the "**Cash Collateral**"). Such cash collateral consists primarily of cash on hand plus the normal income received from the Debtor's customers.

19. The Debtor has an immediate need for the use of Cash Collateral and will suffer irreparable harm if they are not allowed urgently to use Cash Collateral for, among other things, continuing their regular business operations in an orderly manner; maintaining business relationships with vendors, suppliers, and customers, providing for the payment of employees, and satisfying other working capital, timely payment of post-petition vendors and operational needs-- all of which are vital to preserving and having the opportunity to maintain the Debtor's going-

concern value and, ultimately, effectuating a successful course for the benefit of all creditors and parties in interest.

20. The Debtor intends to use cash collateral consistent with a proposed budget (the "<u>Budget</u>"), as attached to the Cash Collateral motion. Such Budget covers the expenses necessary to meet the normal operations of the Debtor's businesses and to properly administer the Debtor's bankruptcy estates while in the protections of chapter 11.

21. As may be set forth in more detail in the Cash Collateral Motion, Debtor is seeking the Lender's authorization to use Cash Collateral. Utilizing cash collateral will help to consider maintaining the Debtor's business operations, to continually replenish its accounts receivable, and thereby preserve and enhance the value of the Secured Lender's collateral.

    **C.**    **Bank Account Motion.**

22. As noted in the Bank Account Motion, the Debtor utilizes in the ordinary course of business certain bank accounts commonly used by comparably sized companies to collect, transfer, concentrate and disburse funds as needed throughout the Debtor's operations.

23. In the Bank Account Motion, Debtor asks the Court (a) to authorize the Debtor to maintain its existing bank accounts, checks and business forms without being required to close such accounts and forms and re-open new ones, and (b) to authorize the Debtor's banks to accept and rely upon Debtor's notices and instructions as to which pre-petition checks can be honored pursuant to any order(s) entered by this Court and which checks must be dis-honored.

24. The Debtor's bank accounts have been employed for some time and constitute an essential business practice. The forced closure and reopening of such accounts would be very costly to the Debtor, significantly disruptive to their operations, and potentially damaging to their business relations with customers, vendors and employees.

    **D.**    **Utilities Motion.**

25. Any interruption of utility service would severely disrupt and diminish the Debtor's chance for a successful reorganization. Accordingly, the Debtor requests the Court enter an order (a) prohibiting the Utility Companies from altering or discontinuing utility services based upon the chapter 11 filing, and (b) establishing procedures as described in the Utilities Motion for determining requests for assurance of payment.

E. **Sales and Use Tax Motion.**

26. The Debtor requires authority to pay any pre-petition License Fees and Trust Fund Taxes that may be owing to the Taxing Authorities or other governmental agencies, to avoid the serious disruption to their reorganization efforts that would result from the nonpayment of such taxes, including the distractions that could result from liability for nonpayment imposed upon the Debtor's officers and directors. The Debtor requests the Court enter an order to permit such payments.

F. **Claims Deadline Motion.**

27. The Debtor requires the ability to timely evaluate, and where necessary, to object to proof of claim in the bankruptcy estate in conjunction with proposing a confirmable plan in this case. In order for the Debtor to reasonably assess all claims and propose a confirmable plan, it is necessary that the universe of claims be identified. Further, due to the shortened deadlines in this Subchapter V case, it is important that the Debtor and its counsel be able to evaluate all claims sufficiently before the deadline for filing a chapter 11 plan. The Debtor requests the Court enter an order to establish the dates by which claims must be filed.

**Conclusion.**

28. I believe the relief sought in the First Day Motions is necessary for the Debtor to effectuate a smooth transition into chapter 11 bankruptcy, to avoid irreparable harm to its business and estate, and is in the best interest of the Debtor's creditors, estates, and other stakeholders.

29.     Accordingly, for the reasons stated herein and in each of the First Day Motions, I respectfully request that each of the First Day Motions be granted in their entirety, together with such further relief as the Court deems just and proper.

Dated:   February 22, 2021

/s/ Reed E. Lawrie
Reed E. Lawrie
Managing Member
Antara Systems, LLC
